## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| CAUSE OF ACTION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-0920 (ABJ) |
| ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

This case arises out of a Freedom of Information Act request by plaintiff Cause of Action for records related to possible disclosures of confidential "return information" by the Internal Revenue Service ("IRS"). Compl. [Dkt. # 1] ¶ 7. The confidentiality of that information is governed by 26 U.S.C. § 6103, and that provision of the Internal Revenue Code lies at the heart of this action. "Return information" is defined in section 6103(b)(2), and section 6103(g) governs disclosures to the President and certain other Executive Branch employees.

On October 9, 2012, plaintiff requested eight categories of records from defendant, the first six of which are at issue in this lawsuit.[1] Ex. 1 to Compl. [Dkt. # 1-3] ("FOIA Req."); Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. for Summ. J. & in Supp. of its Cross-Mot. for Summ. J. [Dkt. # 21-1] ("Pl.'s Mem.") at 3. Specifically, plaintiff sought:

1) All documents, including but not limited to emails, letters, and telephone logs or other telephone records, constituting communications to and/or from

---

[1] The Court granted defendant's unopposed motion to dismiss plaintiff's claims with respect to categories seven and eight of the request on November 4, 2013. Order (Nov. 4, 2013) [Dkt. # 9]. Category seven is the subject of a separate lawsuit by plaintiff against the Treasury Inspector General for Tax Administration. *See Cause of Action v. Treasury Inspector Gen. for Tax Admin.*, 70 F. Supp. 3d 45, 49 (D.D.C. 2014).

        any employee of the IRS concerning any FOIA request or lawsuit that relates to [26 U.S.C.] § 6103(g);

  2)  All documents, including notes and emails, referring or relating to any communication described in request #1;

  3)  Any communications by or from anyone in the Executive Office of the President constituting requests for taxpayer or "return information" within the meaning of § 6103(a) that were not made pursuant to § 6103(g);

  4)  All documents, including notes and emails, referring or relating to any communication described in request #3;

  5)  All requests for disclosure by any agency pursuant to [26 U.S.C. §] 6103(i)(1), (i)(2), and (i)(3)(A); [and]

  6)  All documents, including communications not limited to notes, emails, letters, memoranda and telephone logs or other telephone records, referring or relating to records described in request #5[.]

FOIA Req. at 2.  Plaintiff requested records from the time period of January 1, 2009, through the date of its FOIA request, October 9, 2012.  *Id.* at 1.

      Defendant released 793 pages responsive to categories one and two of plaintiff's request with some redactions, citing FOIA Exemptions 5 and 6.  Br. in Reply to Pl.'s Opp. to Def.'s Mot. for Summ. J. & in Opp. to Pl.'s Mot. for Summ. J. [Dkt. # 26] ("Def.'s Reply") at 1.  Defendant did not release any records in response to items three through six of plaintiff's FOIA request on the grounds that any records related to requests for "return information" would themselves constitute "return information" that is exempt from disclosure under FOIA Exemption 3 in conjunction with section 6103.  *Id.*; Br. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 16-1] ("Def.'s Mem.") at 1.  The IRS also took the position that records responsive to items three through six would be shielded from disclosure by Exemption 6, and that records responsive to items five and six could also be withheld under Exemption 7(C).  Def.'s Mem. at 1; Def.'s Reply at 1.  Nevertheless, defendant conducted a search for records responsive to items three and four,

although it did not search for records responsive to items five and six.  Decl. of Denise Higley in Supp. of Def.'s Mot. [Dkt. # 16-3] ("Higley Decl.") ¶¶ 17–24.

After exhausting its administrative remedies, plaintiff filed a complaint in this Court on June 19, 2013.  Compl.  Defendant moved for summary judgment on April 14, 2014, Def.'s Mot. for Summ. J. [Dkt. # 16], and plaintiff filed a cross-motion combined with its opposition to defendant's motion on June 9, 2014.  Pl.'s Cross-Mot. for Summ. J. [Dkt. # 21] ("Pl.'s Mot."); Pl.'s Mem.  Plaintiff claims that defendant failed to conduct an adequate search for responsive records and that its reliance on most of the FOIA exemptions it claims is improper.  Pl.'s Mem.  The IRS filed a cross-opposition combined with a reply on July 28, 2014, Def.'s Reply, and plaintiff filed a cross-reply on August 22, 2014.  Reply in Supp. of Pl.'s Mot. [Dkt. # 30] ("Pl.'s Reply").

The Court finds that defendant's search for records responsive to items one and two of the FOIA request was adequate, and that its withholdings under Exemption 5 were proper.  But defendant has not described an adequate search for records responsive to items three and four of the request, and it will therefore be ordered to do more.

Defendant's response to items three and four also raises the question of whether Executive Branch requests for "return information" are themselves "return information" that cannot be disclosed.  The Court finds that defendant properly deemed the "tax check" records it identified as potentially responsive to items three and four to be "return information" that should be withheld under FOIA Exemption 3 and section 6103, but the Court does not agree that any other records responsive to these requests would necessarily be exempt from disclosure.  In other words, it is not at all clear that all Executive Branch requests for "return information" can be characterized as

"return information" that is factual in nature and shielded from disclosure by the taxpayer confidentiality statute.

Finally, the Court finds that the failure to search for records responsive to items five and six was not justified by any FOIA exemption. Therefore, the Court will grant both parties' motions in part and deny them in part, and it will remand the case to the IRS to conduct an adequate search for records responsive to items three through six of plaintiff's FOIA request, and to release any reasonably segregable, non-exempt information to plaintiff.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's action *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

On a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire &*

4

*Rubber Co.*, 437 U.S. 214, 242 (1978).  But because "legitimate governmental and private interests could be harmed by [the] release of certain types of information," Congress provided nine specific exemptions to the disclosure requirements.  *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential.").  These nine FOIA exemptions are to be construed narrowly.  *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must, first, demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  And, second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption."  *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005), citing *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

The FOIA requests in this case all reference 26 U.S.C. § 6103, the provision of the Internal Revenue Code that was enacted to preserve taxpayer privacy.  *See Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997).  Subsection (a) sets forth the general proposition that returns and return information shall be confidential, and subsection (b) defines the key terms in the statute.  26 U.S.C. § 6103(a)–(b).  The provisions that follow delineate the exceptions to the confidentiality rule, including the disclosure of returns and return information to the designee of the taxpayer, 26 U.S.C. § 6103(c), certain disclosures to state government officials, *id.* § 6103(d), certain disclosures "to persons having a material interest," *id.* § 6103(e), disclosures pursuant to written requests by

certain members of Congress, *id.* § 6103(f), and disclosures to the President, to executive officials, or to the heads of federal agencies.  *Id.* § 6103(g).[2]

I.     **Defendant describes an adequate search for records responsive to items one and two of plaintiff's FOIA request, but not for records responsive to items three and four.**

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68; *Weisberg*, 705 F.2d at 1351.  To demonstrate that it has performed an adequate search for records responsive to a FOIA request, an agency must submit a reasonably detailed affidavit describing the search.  *Oglesby*, 920 F.2d at 68 (finding summary judgment improper where agency's affidavit lacked sufficient detail); *see also*

---

2       Section 6103(g) provides, in part:

> **(1) In general.**--Upon written request by the President, signed by him personally, the Secretary shall furnish to the President, or to such employee or employees of the White House Office as the President may designate by name in such request, a return or return information with respect to any taxpayer named in such request.
> * * *
> **(2) Disclosure of return information as to Presidential appointees and certain other Federal Government appointees.**--The Secretary may disclose to a duly authorized representative of the Executive Office of the President or to the head of any Federal agency, upon written request by the President or head of such agency, or to the Federal Bureau of Investigation on behalf of and upon written request by the President or such head, return information with respect to an individual who is designated as being under consideration for appointment to a position in the executive or judicial branch of the Federal Government.
> * * *
> Within 3 days of the receipt of any request for any return information with respect to any individual under this paragraph, the Secretary shall notify such individual in writing that such information has been requested under the provisions of this paragraph.

26 U.S.C. § 6103(g).

*Defenders of Wildlife v. U.S. Border Patrol* (*Defenders II*), 623 F. Supp. 2d 83, 91–92 (D.D.C. 2009) (same). A declaration is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defenders II*, 623 F. Supp. 2d at 91–92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). In addition, an affidavit should include the "rationale for searching certain locations and not others." *Defenders II*, 623 F. Supp. 2d at 92; *see also Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 11 (D.D.C. 2012) (holding affidavit was sufficient where it "outline[d] with reasonable detail the CIA's decision to limit the search" to a particular area).

An agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for requested records,'" *Defenders II*, 623 F. Supp. 2d at 91, quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), but they should "describe what records were searched, by whom, and through what processes." *Id.*, quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994). Conclusory assertions about the agency's thoroughness are not sufficient. *See Morley v. CIA*, 508 F.3d 1108, 1121–22 (D.C. Cir. 2007) (finding agency's "single, conclusory affidavit" to be inadequate), quoting *Perry*, 684 F.2d at 128. At the same time, however, where an "affidavit could in theory be more detailed, that fact alone does not warrant denying summary judgment in favor of" a defendant. *White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012). Agency affidavits attesting to a reasonable search "are afforded a presumption of good faith" that "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior* (*Defenders I*), 314 F. Supp. 2d 1, 8 (D.D.C. 2004), first citing *SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and then quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

Defendant submitted an affidavit by Denise Higley, a Tax Law Specialist assigned to the IRS's Headquarters Freedom of Information Act group, describing the agency's search for records responsive to items one through four of plaintiff's request.[3] Higley Decl. Plaintiff argues that the Higley declaration is insufficiently detailed and does not describe an adequate search.[4] Pl.'s Mem. at 29–33; Pl.'s Reply at 11–16. The Court finds that the Higley declaration does describe a search that was adequate with respect to items one and two of the FOIA request, but not with respect to items three and four.

### A. The search for records responsive to items one and two was adequate.

Items one and two of plaintiff's FOIA request sought records pertaining to any FOIA requests or lawsuits relating to section 6103(g) of the Internal Revenue Code. FOIA Req. at 2.

---

3    The IRS did not conduct a search for records responsive to items five and six of plaintiff's request. Def.'s Mem. at 21; Higley Decl. ¶ 24.

4    In its opening brief, plaintiff also contended that the search described in the Higley declaration was insufficient because it did not uncover documents related to a 2012 FOIA request by another organization, Citizens for Responsibility and Ethics in Washington ("CREW"), and because it construed item four of the request too narrowly by limiting the search to requests for "tax checks" under section 6103(c). Pl.'s Mem. at 32–33. The IRS responded that the CREW request did not involve section 6103(g), and so any records associated with the CREW request would not be responsive to items one or two of the FOIA request at issue here. Def.'s Reply at 20; *see also* Decl. of Jennifer Black in Supp. of Def.'s Mot. [Dkt. # 26-3] ¶ 3. Defendant also pointed out that, in fact, the Higley declaration indicates that the search for records responsive to items three and four was not limited to "tax checks." Def.'s Reply at 20–21; *see also* Higley Decl. ¶¶ 17–21. Plaintiff did not contest this evidence or address these points further in its reply brief, and so the Court finds that it has conceded these arguments. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004); *see also Lewis v. District of Columbia*, No. 10–5275, 2011 WL 321711, at *1 (D.C. Cir. 2011).

Higley explains that at the time she began searching for records, she was aware that plaintiff had previously submitted a FOIA request pertaining to section 6103(g) in March of 2012, and she determined that records related to the March 2012 request would be responsive to the October 2012 request at issue here.  Higley Decl. ¶¶ 5, 7.  Higley retrieved all records related to plaintiff's March 2012 request from the IRS's Automated Freedom of Information Act ("AFOIA") database, which is "the image-based document management system used by the Office of Privacy, Governmental Liaison and Disclosure to process FOIA requests."  *Id.* ¶¶ 7–8.

Higley learned that plaintiff had filed a lawsuit related to its March 2012 FOIA request in October 2012.[5]  Higley Decl. ¶ 9.  She worked with the attorney in the Office of Chief Counsel who was handling that lawsuit, Deborah Lambert-Dean, to conduct an additional search for records that might be responsive to items one and two of the instant request, and the two searched the AFOIA database, as well as the Electronic Disclosure Information System ("E-DIMS") database, the predecessor database to AFOIA.  *Id.* ¶¶ 8–10 & n.1.  Those databases were searched using the terms "6103g, White House, President of the United States, POTUS, Barack, Obama, George, and Bush" in a manner that would have returned records containing any one of those terms.  *Id.* ¶ 10 & n.3.  The only responsive records that this search revealed pertained to plaintiff's March 2012 FOIA request and the associated lawsuit.  *Id.* ¶ 10.

Higley reviewed those records, consulted with her colleagues, and identified the individuals who were involved with plaintiff's March 2012 FOIA request and might therefore possess responsive records.  Higley Decl. ¶ 11.  She directed each of those individuals to conduct a search for records that would be responsive to items one and two of the request at issue in this case.  *Id.*

---

5    *Cause of Action v. IRS*, No. 12-cv-1633 (RLW) (D.D.C. dismissed Dec. 5, 2012).

Based on the records she received from those searches, and upon consultation with Lambert-Dean, Higley determined that the IRS Media Relations Office and the IRS Office of Appeals might possess responsive records.  Higley Decl. ¶ 12.  She sent those offices a copy of plaintiff's request and a memorandum directing them to search for records responsive to items one and two.  *Id.*  She also requested a copy of the appeal letter related to plaintiff's March 2012 FOIA request from the Office of Appeals.  *Id.*  Based on the response she received from the Media Relations Office, she sent a copy of plaintiff's request and a search memorandum to the IRS Office of Communications and Liaison.  *Id.*  Higley followed the trail of the records yielded by those searches, and she determined that specific individuals in the Office of Privacy, Governmental Liaison, and Disclosure might also possess records responsive to items one and two.  *Id.* ¶ 13.  She forwarded plaintiff's request to them and asked them to search for records responsive to items one and two.  *Id.*

Higley states that she received responses from everyone to whom she sent a search request, and that she determined that plaintiff's March 2012 request was the only FOIA request the IRS had received relating to section 6103(g).  *Id.* ¶¶ 14–15.  In total, she found 790 pages of responsive documents, made redactions to 289 pages, and identified 6 pages to be withheld in full.[6]  *Id.* ¶ 16.

The parties do not dispute that, "[i]n cases where documents are collected from several different offices, unit-specific descriptions are not required, and the affidavit of the officer ultimately responsible for the supervision of the FOIA search is sufficient."  *Trans Union*, 141 F.

---

6   The IRS's initial response to plaintiff erroneously stated that there were 796 pages responsive to items one and two of plaintiff's FOIA request, but the correct number was in fact 790.  Def.'s Mem. at 4; Higley Decl. ¶ 16.  During the pendency of this case, the IRS identified three additional pages of records responsive to the first two items in plaintiff's FOIA request, bringing the total number of pages to 793.  Def.'s Mem. at 4.

Supp. 2d at 68–69; *see also Judicial Watch, Inc. v. U.S. Dep't of Health & Human Servs.* (*Judicial Watch v. HHS*), 27 F. Supp. 2d 240, 244 (D.D.C. 1998) ("Unit-specific descriptions are not required, at least where plaintiff has failed to raise some issue of fact necessitating rebuttal."). Nevertheless, plaintiff argues that the Higley declaration is inadequate because it does not provide enough information about each of the individual searches that was performed and the people who performed them. Pl.'s Mem. at 30–32; Pl.'s Reply at 11–15.

But the Higley declaration devotes five pages to describing a comprehensive search for records responsive to items one and two, including the specific terms she used to search AFOIA, the review of responsive records, and the process of identifying and issuing search memoranda to individuals and offices that were likely to possess additional records. *See* Higley Decl. ¶¶ 7–16; *see also Judicial Watch v. HHS*, 27 F. Supp. 2d at 244 ("[T]he declaration's five-page overview of the search effort is adequate to support the reasonableness of the search."). The Court finds that the description provided in the declaration is sufficient to indicate "what records were searched, by whom, and through what processes" with respect to items one and two of the request. *See Defenders II*, 623 F. Supp. 2d at 91, quoting *Steinberg*, 23 F.3d at 552. Moreover – and contrary to plaintiff's allegations, *see* Pl.'s Mem. at 30; Pl.'s Reply at 11–12 – Higley avers that she "searched all of the sources and databases that might reasonably contain responsive records." Higley Decl. ¶ 28; *see also Oglesby*, 920 F.2d at 68. In light of the sufficiently detailed description provided in the affidavit, as well as the absence of any indication that the search was conducted in bad faith, the Court concludes that defendant's search for records responsive to items one and two of plaintiff's FOIA request was adequate. *See Defenders I*, 314 F. Supp. 2d at 8.

#### B.     *The search for records responsive to items three and four was not adequate.*

Items three and four of plaintiff's FOIA request sought records related to requests for "taxpayer or 'return information'" by anyone in the Executive Office of the President that were not made pursuant to section 6103(g).  FOIA Req. at 2.  Higley states that, based on her own experience and in consultation with Lambert-Dean and Gary Prutsman, the Associate Director of the Disclosure Office, she determined that "correspondence between the IRS and the Executive Office of the President [was] most likely maintained by the Office of Legislative Affairs," and that the Services and Enforcement Office, the Small Business/Self Employed function, the IRS Media Relations Office, and the Office of the Commissioner might also possess responsive documents. Higley Decl. ¶¶ 10, 17–18.  She issued search memoranda to all but one of those offices requesting that they search for records responsive to plaintiff's FOIA request.[7]  *Id.* ¶¶ 19–20.  Higley received responses to all of the search memoranda she issued, but none of the offices found any records related to plaintiff's request.  *Id.* ¶ 21.

Higley conferred with her colleagues, and obtained annual IRS reports to Congress for the dates in question "regarding disclosures of return information within the Federal government." Higley Decl. ¶ 22.  She determined from these reports that there had been "a number of requests for 'tax checks'" that could be responsive to plaintiff's request.  *Id.* ¶ 23.  "'Tax checks,'" she explains, "are requests for the return information of individuals under consideration for employment within the Executive Branch or appointment by the President" that are made with the written consent of the candidate under 26 U.S.C. § 6103(c).  *Id.* ¶ 23.  Higley did not conduct a

---

7        Higley did not issue a search memorandum to the Small Business/Self Employed function because it had already informed her by email that it would not have any responsive records.  Higley Decl. ¶ 19.

search for "tax checks" and related records because she determined that they were exempt from disclosure under FOIA Exemption 3 and section 6103(a). *Id.*

The Court finds that the description of the search for records responsive to items three and four of the request is not adequate. Higley provides no explanation for her conclusion that records of requests made by the Executive Branch would be located in the Office of *Legislative* Affairs or in any of the other offices she named, or why they would not be elsewhere. *See* Higley Decl. ¶¶ 17–18. Also, this portion of the FOIA request sought a broad range of records – those related to requests for "taxpayer or 'return information'" by the Executive Office of the President that were *not* made pursuant to section 6103(g), FOIA Req. at 2 – and Higley's failure to identify any key words or search terms that were used, or to describe the types of searches that were performed in any detail, undermines any claim that the search was "reasonably calculated to uncover all relevant documents." *See Valencia-Lucena*, 180 F.3d at 325, quoting *Truitt*, 897 F.2d at 542. Therefore, the Court finds that defendant has not carried its burden to show that the search for records responsive to items three and four of plaintiff's request was adequate.

## II.   Defendant's withholdings under Exemption 5 were proper.

The IRS redacted and withheld records responsive to items one and two of plaintiff's FOIA request pursuant to FOIA Exemption 5, Def.'s Mem. at 28–36, which permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[8] 5 U.S.C. § 552(b)(5); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (holding that a record may be withheld under Exemption 5 only if "its source [is] . . . a [g]overnment agency, and

---

8    In addition, defendant redacted the personal phone numbers of employees from the records produced to plaintiff, citing FOIA Exemption 6. Def.'s Mem. at 37. Plaintiff does not object to this withholding. Pl.'s Mem. at 19 n.2.

it . . . fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it").   In support of these withholdings, defendant has supplied two declarations by Francis McCormick, an attorney in the IRS's Office of Chief Counsel.  Decl. of Francis McCormick in Supp. of Def.'s Mot. [Dkt. # 16-4] ("McCormick Decl."); 1st Supplemental Decl. of Francis McCormick in Supp. of Def.'s Mot. [Dkt. # 26-2] ("Supp. McCormick Decl.").   Although plaintiff concedes that the records at issue here qualify as "inter-agency or intra-agency memorandums or letters" within the meaning of Exemption 5, Pl.'s Mem. at 23 n.3, plaintiff contends that defendant has not adequately justified its reliance on Exemption 5, and requests that the Court conduct an *in camera* review of the 289 pages defendant has released with redactions.[9]  *Id.* at 22–29.   But the Court finds that plaintiff's reliance on Exemption 5 is appropriate and that *in camera* review is therefore unnecessary.

### A.    Legal Standard

Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981).   The agency seeking to withhold a document bears the burden of showing that a FOIA exemption applies. *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

---

9     Plaintiff's request for *in camera* review of the 289 redacted pages does not appear to include the additional 6 pages that defendant withheld in full.  *See* Pl.'s Mem. at 28 ("[G]iven the relatively modest 289 pages that Defendant has attempted to withhold under Exemption 5, *in camera* review would not be onerous.").

1.   Deliberative Process Privilege

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), and citing *EPA v. Mink*, 410 U.S. 73, 86–87 (1973).   Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).   "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Records fall within the scope of the deliberative process privilege "only if they 'reflect[] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoption of a policy.'" *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2009), quoting *Taxation with Representation Fund*, 646 F.2d at 667.   Records that do not provide advice to a superior, suggest the disposition of a case, discuss the relative pros and cons of a specific approach, or constitute "one step of an established adjudicatory process" are not deliberative. *See Coastal States*, 617 F.2d at 868.   It is incumbent upon the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Id.* at 869, citing *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975); *accord Senate of P.R. ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 585–86 (D.C. Cir. 1987).

### 2.   Attorney Work Product Privilege

The attorney work product privilege protects materials that reflect the "mental processes of the attorney," *Klamath*, 532 U.S. at 8, quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975), when the materials were "prepared in anticipation of litigation or for trial." *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3).   An agency can satisfy the "anticipation of litigation" standard by "demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind," even if no specific lawsuit has begun.  *SafeCard Servs.*, 926 F.2d at 1202.

### 3.   Attorney-Client Privilege

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862.  The privilege also protects communications from attorneys to their clients that "rest on confidential information obtained from the client." *Tax Analysts*, 117 F.3d at 618, quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977).   In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of the attorney-client privilege.  *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998), citing *Coastal States*, 617 F.2d at 863.

### B.   *Defendant's Withholdings*

Of the 793 pages of records that defendant identified as responsive to items one and two of plaintiff's request, defendant withheld 289 pages in part and 6 pages in full.  Pl.'s Mem. at 4; McCormick Decl. ¶ 8.  Defendant asserts that these withholdings are justified by FOIA Exemption 5, invoking the deliberative process privilege, the attorney work product privilege, and the

attorney-client privilege.  Def.'s Mem. at 29.  Plaintiff contends that defendant has not adequately justified its reliance on any of these privileges.  Pl.'s Mem. at 23.

The material defendant withheld falls into three general categories:  (1) records related to defendant's media response to a press release issued by plaintiff on October 2, 2012, in connection with its October 2012 FOIA lawsuit; (2) records related to defendant's litigation response to plaintiff's October 2012 FOIA lawsuit; and (3) records related to defendant's "calendar year 2009 reports to the Joint Committee on Taxation under 26 U.S.C. § 6103."  McCormick Decl. ¶ 18. Defendant contends that all of these records are protected by the deliberative process privilege, and that some of them are also protected by the attorney work product and attorney-client privileges.  Def.'s Mem. at 33–36 & n.11; McCormick Decl. ¶ 18.  The Court finds that these records fall under the deliberative process privilege, with the exception of one record, which falls under the attorney work product privilege.  Therefore, defendant's withholdings and redactions were appropriate.

### 1.   Records Related to Defendant's Media Response

Defendant has carried its burden to show that all of the redacted records related to the media response are protected by the deliberative process privilege.  Despite plaintiff's protestations to the contrary, *see* Pl.'s Mem. at 24, "Exemption 5 has indeed been found to cover agency deliberations about how to respond to media inquiries" as long as the deliberations are "predecisional."  *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 118 (D.D.C. 2014) (collecting cases).  In this case, the withheld portions of the records precede the finalization of the IRS's media response.  Def.'s Mem. at 32; McCormick Decl. ¶ 18(a).  In addition, defendant's declaration makes it plain that the redacted material is deliberative because it "reflect[s] the give-and-take" of the consultative process, *see Judicial Watch, Inc. v. FDA*, 449 F.3d at 151 (citation

17

omitted), including discussions between the IRS Office of Media Relations and the IRS Office of

Chief Counsel, leading up to a "governmental decision[]" about the IRS's public position with

respect to the issues raised in plaintiff's press release.[10]  *See Public Citizen*, 598 F.3d at 875

(citation omitted); *see also* Supp. McCormick Decl. ¶ 3 (attesting that "[i]t is the standard practice

of the Office of Media Relations" to consult the Office of Chief Counsel "prior to commenting on

a matter related to pending litigation").  Defendant has therefore carried its burden to show that

the deliberative process privilege applies to the records related to the media response.

### 2.  Records Related to Defendant's Litigation Response

In addition, defendant has established that the deliberative process privilege applies to all

but one of the records related to its litigation response to plaintiff's October 2012 FOIA lawsuit.

---

10      *See* McCormick Decl. ¶¶ 16, 18(b) (describing "an e-mail message . . . from [Senior Counsel in the IRS Office of Chief Counsel A.M.] Gulas to [Public Affairs Specialist in the IRS Office of Media Relations] Dean Patterson providing . . . strategic recommendations (not involving legal analysis) regarding the IRS response to the October 2, 2012, press release"); *id.* ¶ 18(e)(i) ("The redacted lines in the email messages . . . contain a draft IRS media response for review and comment."); *id.* ¶ 18(f)(i) ("The redacted lines in these e-mail messages convey . . . information . . . regarding the IRS' possible strategy in responding to the October 2, 2012, press release, as well as opinions regarding the impact of that press release."); *id.* ¶ 18(h)(i) ("The redacted lines in this e-mail message . . . convey a question by John Davis regarding the development of the IRS response to the October 2, 2012, press release."); *id.* ¶ 18(*l*) (describing an "email message . . . concerning advice from the IRS Office of Chief Counsel regarding development of the IRS response to the October 2, 2012 press release); *id.* ¶¶ 11, 18(d), 18(n)(i) ("The redacted lines in the e-mail messages . . . convey . . . statements from [Supervisory Public Affairs Specialist in the IRS Office of Media Relations] Michelle Eldridge to attorney [and Branch Chief, IRS Office of Chief Counsel (Procedure and Administration) Richard] Goldman regarding the development of the IRS' response to the October 2, 2012, press release, as well as draft IRS statements and revisions."); *id.* ¶ 18(o)(i) ("The redacted lines in the e-mail message . . . contain a draft IRS media response for review and comment."); *id.* ¶ 18(p)(i) ("The redacted lines in the e-mail messages . . . contain draft IRS statements and revisions."); *id.* ¶¶ 16(a)(i), 18(q)(i) ("The redacted lines convey . . . strategic advice (not involving legal analysis) from attorney Gulas to [Chief, IRS Communications & Liaison] Frank Keith concerning the IRS response to the press release."); *id.* ¶¶ 18(d), 18(r)(i) ("The redacted lines in the e-mail message . . . convey . . . strategic advice (not involving legal analysis) from attorney [and Senior Technician Reviewer, Office of Chief Counsel (Procedure and Administration) Donald] Squires to [Associate Director, Disclosure Office] Gary Prutsman concerning the IRS response to the press release.").

The redacted portions of these records precede agency decisions about litigation strategy, including

what recommendations the IRS would make to its attorneys in the Department of Justice ("DOJ")

Tax Division, who had not yet taken action in the case at the time.  Def.'s Mem. at 32–34.  As with

the media-related materials, defendant's declaration demonstrates that the withheld materials, with

one exception, contain "the give-and-take" of the consultative process, *see Judicial Watch, Inc. v.*

*FDA*, 449 F.3d at 151 (citation omitted), with respect to those "governmental decisions."[11]  *See*

*Public Citizen*, 598 F.3d at 875 (citation omitted).  There is also some overlap between the media-

related and litigation strategy-related withholdings.[12]

---

11      *See* McCormick Decl. ¶ 18(a)(ii) ("The redacted lines in the e-mail messages . . . contain the opinions and recommendations of attorneys Gulas and Lambert-Dean in development of the IRS Office of Chief Counsel recommendations to the Department of Justice Tax Division regarding the October 2, 2012 FOIA suit."); *id.* ¶ 18(d)(i) ("The redacted lines in this e-mail message contain a . . . description of possible recommendations to the Department of Justice regarding litigation strategy with respect to the October 2, 2012, FOIA suit."); *id.* ¶¶ 18(i), 18(i)(i) ("The redacted lines contain questions from attorney Goldman to attorneys [Sarah] Tate and Squires concerning development of the IRS Office of Chief Counsel recommendations to the Department of Justice Tax Division regarding the October 2, 2012 FOIA suit."); *id.* ¶ 18(j)(i) ("The redacted lines contain a statement of an opinion about the IRS litigating position in the October 2, 2012, FOIA suit in light of the IRS response to the October 2, 2012 press release."); *id.* ¶ 18(k)(i) ("The redacted lines in the e-mail messages . . . contain statements and questions about issues regarding the IRS litigating position in the October 2, 2012, FOIA lawsuit."); *id.* ¶¶ 18(c), 18(m)(i) ("The redacted lines in the e-mail message . . . convey a question, comments, and opinions from attorney Lambert-Dean to [DOJ Tax Division Trial Attorney Carmen] Banerjee about the March 2012 FOIA request in the context of developing the IRS litigating position in the October 2, 2012, FOIA suit.").   The Court notes that defendant has not fully identified attorney Sarah Tate in its pleadings or declarations, but this oversight is not material to this decision.

12      *See, e.g.,* McCormick Decl. ¶ 18(a)(i)("The redacted lines in the e-mail messages . . . describe the . . . strategic advice (not involving legal analysis) that attorney Gulas had previously given . . . during the development of the IRS media response . . . [and] communications that attorney Gulas had with attorneys at the Department of Justice . . . regarding the development of the IRS media response with respect to litigation concerns."); *id.* ¶ 18(c) (describing e-mail messages between attorney Gulas and three DOJ attorneys with "redacted text [that] discusses the development of the IRS response to the October 2, 2012, press release in light of the October 2, 2012, FOIA suit . . . as well as discussions of litigation strategy.").

The remaining withholding falls squarely within the attorney work product privilege. Paragraph 18(a)(iii) of the McCormick declaration provides:  "The redacted lines in the e-mail message . . . contain information regarding attorney Gulas' investigation regarding the March 2012 FOIA request, which attorney Gulas conducted after plaintiff filed its October 2012 FOIA suit." McCormick Decl. ¶ 18(a)(iii).   It further states that "[t]he withheld information involves discussions amongst [Office of Chief] Counsel attorneys regarding active FOIA litigation with the plaintiff."  *Id.*   Even if it does not fall within the deliberative process privilege, the withheld material contains details about an investigation undertaken by an IRS attorney with respect to plaintiff's then-pending 2012 FOIA lawsuit, *see Judicial Watch, Inc. v. DOJ*, 432 F.3d at 369, and it indicates that the redacted material reflects the "mental processes" of Office of Chief Counsel attorneys regarding active litigation.  *See Klamath*, 532 U.S. at 8, quoting *Nobles*, 422 U.S. at 238. Thus, the Court finds that the redactions described in paragraph 18(a)(iii) of the McCormick declaration are protected by the attorney work product privilege and were properly withheld on that basis.[13]

### 3.   Records Related to Defendant's Calendar Year 2009 Reports to the Joint Committee on Taxation

In addition to the documents related to the IRS's response to plaintiff's 2012 press release and FOIA lawsuit, defendant's declaration indicates that it withheld certain "administrative materials concerning the development of the IRS calendar year 2009 reports to the Joint Committee on Taxation under 26 U.S.C. § 6103."  McCormick Decl. ¶ 18(g).  Plaintiff has not

---

13    Because the Court has determined that all of the litigation strategy-related redactions are justified by the deliberative process privilege or the attorney work product privilege, it need not consider whether the attorney-client privilege might also apply, or whether the attorney work product privilege applies to the information that was properly withheld under the deliberative process privilege.

contested this withholding beyond its blanket assertion that "the IRS has failed to provide adequately specific justifications for its deliberative process withholdings."  Pl.'s Reply at 8.

Defendant's explanation for its withholdings with respect to this record – that "it contains draft documents for consideration by the Commissioner, rather than final versions of those documents," McCormick Decl. ¶ 18(g)(i) – sufficiently indicates that the deliberative process privilege applies.  Thus, in the absence of any other objection by plaintiff, the Court finds that the redactions described in paragraph 18(g) of the McCormick declaration are appropriate.

### III. Defendant has not established that all of its withholdings under Exemption 3 and section 6103 were justified.

The IRS takes the position that "[a]ll of the requests for return information described in items 3 through 6" of plaintiff's request "would themselves be return information protected from disclosure under Section 6103(a) and Exemption (b)(3)."  Def.'s Mem. at 12.  For that reason, defendant argues, it was not even required to search for records responsive to those portions of the request.  *Id.* at 11–16; *see also Lehrfeld v. Richardson*, 132 F.3d 1463, 1465 (D.C. Cir. 1998) (holding that the IRS's failure to search for particular records "was reasonable because those documents were not subject to disclosure").

Nevertheless, defendant did conduct a search for some records responsive to items three and four of plaintiff's FOIA request, Def.'s Mem. at 17 n.5, which sought records related to requests by "anyone in the Executive Office of the President" for "taxpayer or 'return information' . . . that were not made pursuant to § 6103(g)."  FOIA Req. at 2.  Through that search, defendant identified "a number of requests for 'tax checks,'" which are "requests for the return information of individuals under consideration for employment within the Executive Branch or appointment by the President" made under section 6103(c).  Higley Decl. ¶ 23.  Because defendant determined that "tax checks" and related records would necessarily constitute "return

21

information," it did not search further for those records.  *Id.*  And defendant did not search for any

records related to items five and six of the request.  *See* Def.'s Mem. at 22.

The Court ordered the IRS to provide a representative sample of the "tax check" records

for *in camera* review.  Minute Order (Aug. 3, 2015); *see Arieff v. U.S. Dep't of Navy*, 712 F.2d

1462, 1469 (D.C. Cir. 1983) ("[T]he receipt of *in camera* affidavits . . . when necessary, [is] 'part

of a trial judge's procedural arsenal.'"), quoting *United States v. Southard*, 700 F.2d 1, 11 (1st Cir.

1983).  Upon review of the records, the Court finds that "tax checks" and related records do

constitute "return information" and are therefore exempt from disclosure under FOIA Exemption

3 and 26 U.S.C. § 6103.  But the Court does not agree that *any and all* records responsive to items

three through six of the FOIA request would necessarily constitute exempt "return information."

For that reason, and because the Court has already determined that the search for records

responsive to items three and four of the request was inadequate, *see supra* § I(B), the Court will

remand the case to defendant so that it may conduct an adequate search for records responsive to

items three through six and release all reasonably segregable, non-exempt information to plaintiff.

### A. *Legal Standard*

FOIA Exemption 3 authorizes agencies to withhold information that is "specifically

exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  In response to items three through

six of the FOIA request, defendant invokes Exemption 3 by pointing to section 6103 of the Internal

Revenue Code, which requires that returns and return information be kept confidential subject to

certain exceptions.  *See* 26 U.S.C. § 6103(a).  "That § 6103 is the sort of nondisclosure statute

contemplated by FOIA exemption 3 is beyond dispute."  *Tax Analysts*, 117 F.3d at 611.

The "core purpose" of section 6103 is to "protect[] taxpayer privacy."  *Id*. at 615, citing

*Church of Scientology of Cal. v. IRS*, 484 U.S. 9, 16 (1987).  It was amended into its current form

in 1976, "in the wake of Watergate and White House efforts to harass those on its 'enemies list,'"

and it "restricts government officers and employees from revealing 'any return' or 'return

information.'"  *Id.* at 611.  The definition of "return information" is very broad, and it includes:

> a taxpayer's identity, the nature, source, or amount of his income, payments,
> receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax
> liability, tax withheld, deficiencies, overassessments, or tax payments,
> whether the taxpayer's return was, is being, or will be examined or subject
> to other investigation or processing, or any other data, received by, recorded
> by, prepared by, furnished to, or collected by the Secretary with respect to
> a return or with respect to the determination of the existence, or possible
> existence, of liability (or the amount thereof) of any person under this title
> for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).

Although this definition does not lend itself to easy interpretation, courts agree that it

"reaches far beyond what the phrase 'return information' would normally conjure up."  *Landmark

Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001); *see also Hull v. IRS*, 656 F.3d 1174,

1183 (10th Cir. 2011) ("The Code expansively defines return information . . . ."); *Judicial Watch

v. Rossotti*, 285 F. Supp. 2d 17, 29 (D.D.C. 2003) ("The terms 'returns and return information' are

broadly defined in [the] statute . . . .").  Still, the definition has limits.  As the Court of Appeals

observed in *Church of Scientology of California v. IRS*, 792 F.2d 146 (D.C. Cir. 1986), *aff'd*, 484

U.S. at 18, "Congress would not have adopted such a detailed definition of return information in

Section 6103 if it had simply intended the term to cover all information in IRS files."  *Id.* at 151.

To qualify as "return information," the information need not "identify a particular

taxpayer," *Church of Scientology*, 484 U.S. at 15, but it must be "unique to a particular taxpayer,"

or "taxpayer-specific."  *Tax Analysts*, 117 F.3d at 614.  "[T]he mere removal of identifying details"

does not alter the confidentiality of documents that constitute "return information."  *Church of

Scientology*, 484 U.S. at 15.  At the same time, when a record that is not itself "return information"

contains both return information and non-return information, the non-return information can be released if it is reasonably segregable. *See, e.g.*, *Tax Analysts*, 117 F.3d at 616, 620 (holding that the IRS could redact "true return information" from certain field memoranda, but that the legal analyses contained in the memoranda were not exempt "return information").

**B.      *The "tax check"-related records responsive to items three and four of plaintiff's FOIA request constitute "return information."***

Items three and four of plaintiff's FOIA request sought information related to "communications by or from anyone in the Executive Office of the President constituting requests for taxpayer or 'return information' . . . that were not made pursuant to § 6103(g)," FOIA Req. at 2, which is the subsection of the Code that authorizes a particular set of disclosures to the President and other designated executive branch employees. *See* 26 U.S.C. § 6103(g).

Although it contends that it did not have to search for records responsive to items three and four, Def.'s Mem. at 11–12, defendant did conduct a search, and it determined that the only responsive records would be "tax checks" and related records. *Id.* at 17 n.5. Defendant characterized these "tax checks" as "requests for the return information of individuals under consideration for employment within the Executive Branch or appointment by the President" made

with the written consent of the individual pursuant to 26 U.S.C. § 6103(c).[14]  *Id.*; Higley Decl.

¶ 23.  Defendant claims that the records related to these requests, and the requests themselves, are

"return information."  Def.'s Mem. at 17.

After reviewing the sample of "tax checks" and related records supplied by the IRS, the

Court questions as a preliminary matter whether these records are responsive to this FOIA request

at all.  The "tax check" document itself is a request made *by a taxpayer* – not by the Executive

Office of the President – who is asking the IRS to disclose certain aspects of his or her return

information to an individual in the Executive Office of the President.  So it is not clear that these

records respond to plaintiff's request for records related to "communications *by or from anyone in*

*the Executive Office of the President*."  *See* FOIA Req. at 2 (emphasis added).

But even if "tax checks" and records related to "tax checks" are responsive to the FOIA

request, the Court finds that they are exempt from disclosure under Exemption 3 and section 6103.

It is undisputed that any personally identifying information contained in the records related to "tax

checks" would constitute "return information" within the plain language of section 6103.  *See* 26

U.S.C. § 6103(b)(2)(A) (defining "return information" to include "a taxpayer's identity"); *see also*

---

14      In a notice filed nearly a year after the briefing in this case concluded, plaintiff objects for
the first time that section 6103(c) does not authorize disclosures to the Executive Office of the
President, and that, instead, "Congress clearly intended that the President perform tax checks
pursuant to 6103(g)(2)."  Pl.'s Notice of Supplemental Authority [Dkt. # 45] at 2.  Plaintiff further
contends that "there are no reporting requirements for 26 U.S.C. § 6103(c)" and that "the
Presidential circumvention mechanism for the unauthorized disclosure of taxpayer information
under 6103(c) has become so rampant that the IRS attempts compliance by reporting to [the
Congressional Joint Committee on Taxation] *some* 'tax checks' . . . leaving the taxpayer in the
dark about the actual nature of the tax checks the IRS is reporting."  *Id.* at 4 (footnote omitted).
Plaintiff appears to urge the Court to find that "[t]he President should not be allowed to trump the
specific restrictions of 6103(g) by invoking the broad consent provisions of 6103(c)."  *Id.* at 6.
But none of these contentions – or the 59 pages of supporting materials attached by plaintiff as
exhibits to the notice – is germane to the question before the Court, which is whether the IRS has
complied with the requirements of the FOIA statute.

Pl.'s Mem. at 13 ("Plaintiff seeks information that can be reasonably segregated such that non-personally identifying information could be disclosed."). The parties differ, however, as to whether the "tax check" records are, themselves, "return information," or merely records that *contain* "return information."

The IRS contends that the "tax check" records fit within the catch-all "other data" provision in the definition of "return information." Def.'s Mem. at 17; *see also* 26 U.S.C. § 6103(b)(2)(A). For any withholding under this provision – and therefore, Exemption 3 – to be proper, the records must be: (1) data, (2) "received by, recorded by, prepared by, furnished to, or collected by the Secretary," (3) "with respect to a return or . . . to the determination of the existence, or possible existence, of liability . . . of any person" under the Internal Revenue Code. 26 U.S.C. § 6103(b)(2)(A).

Plainly, any records responsive to items three and four of the request would have been "received by, recorded by, prepared by, [or] furnished to" the Secretary of the Treasury. *See id.* And a review of the records themselves shows that they relate both to returns[15] and to determinations of the existence of liability of a taxpayer: the "tax check" requests seek information about the individual taxpayer's tax returns and tax liability, and the IRS's responses convey that information. *See Landmark*, 267 F.3d at 1136 (discussing "the extremely general character" of the phrase "'with respect to'").

---

15     "The term 'return' means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed." 26 U.S.C. § 6103(b)(1).

But are "tax checks" and affiliated records "data"?  The text of the statute does not provide an answer, and the limited case law interpreting the statute does not directly address the question before the Court.

The D.C. Circuit has issued two opinions interpreting the term.  *See Tax Analysts*, 117 F.3d 607; *Landmark*, 267 F.3d 1132.  In *Tax Analysts*, the Court of Appeals considered whether IRS Field Service Advice Memoranda ("FSAs") constituted "return information" under section 6103.  117 F.3d at 608, 611–12.  FSAs are issued by the IRS Office of Chief Counsel in response to requests from field personnel for legal guidance, usually with respect to a specific taxpayer.  *Id.* at 608–09.  The parties agreed that any FSAs related to individual taxpayers contained at least some return information, and the dispute centered upon whether the IRS could properly withhold the documents in their entirety under Exemption 3.  *Id.* at 611.  Specifically, the Court was asked to decide:  "Are the legal interpretations and analyses contained in the FSAs 'any other data . . . '?"  *Id.* at 612.  If those portions were deemed to constitute "data," then, in light of the Supreme Court's holding in *Scientology*, it would not matter whether the legal analyses identified any particular taxpayer or not – they would be "return information" shielded by section 6103.  *Id.*

The Court accorded the agency's interpretation of the Internal Revenue Code the heightened deference derived from *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984),[16] but it concluded nonetheless:  "[w]hile the IRS's interpretation of 'data' in [section 6103] may be linguistically possible . . . it is not a permissible construction of

---

[16]     In this case, the IRS does not contend that its interpretation of section 6103 is owed *Chevron* deference, nor does it claim that the Court should accord it a lessened degree of deference under the *Skidmore* doctrine.  Def.'s Reply at 8.  Rather, defendant's claims are "based on a direct application of the Court's holding in *Scientology*."  *Id.*  The *Scientology* case established the principle that "Congress did not intend [section 6103] to allow the disclosure of otherwise confidential return information merely by the redaction of identifying details."  484 U.S. at 16.

the statute in light of its structure and purposes." *Id.* at 613, 616; *see also id.* at 614–15 (stating that although "we cannot say that the term 'data' is incapable of bearing the meaning the IRS ascribes to it," the Court was "hard pressed to find any reason derived from § 6103 in favor of the IRS's interpretation").

The Court went on to observe that the term "data" appears at the end of a list of items such as "the taxpayer's identity, income, payments, exemptions, liabilities, net worth and so forth" that were "factual in nature." *Id.* at 613–14. The Court made reference to the canon of statutory construction that "limit[s] 'general terms which follow specific ones to matters similar to those specified,'" *id.* at 614, quoting *Gooch v. United States*, 297 U.S. 124, 128 (1936), and it determined that, like the other terms listed in section 6013(b)(2)(A), the term "data" is meant to refer to information that is "unique to a particular taxpayer." *Id.* The Court concluded that the legal analyses and conclusions were not "taxpayer-specific," and therefore that they were not "return information." *Id.* at 615. The Court also stated that the IRS had failed to justify the argument that "non-taxpayer-specific" information constituted "return information," since withholding it "ha[d] nothing to do with § 6103's core purpose of protecting taxpayer privacy." *Id.*, citing *Church of Scientology*, 484 U.S. at 16.

Here, by contrast, the "tax checks" and the documents generated in response to them *are* taxpayer specific. So the *Tax Analysts* holding is not enough to carry the day for plaintiff, and that conclusion remains the same even if the individual taxpayers' identities can be redacted from the material. *See Tax Analysts*, 117 F.3d at 612 ("If these portions of the FSAs are within the catchall 'other data,' the Supreme Court's *Scientology* opinion makes it irrelevant whether the legal analyses and conclusions themselves identify any individual taxpayers."), citing *Church of*

*Scientology*, 484 U.S. at 18; *see also Church of Scientology*, 484 U.S. at 15 ("'[R]eturn information' remains such even when it does not identify a particular taxpayer.").

In *Landmark*, the D.C. Circuit looked at the language of section 6103 again. It determined that the identities of third parties who contacted the IRS to request audits or investigations of 501(c)(3) tax-exempt organizations, as well as the contents of their communications with the agency, constituted "data," and therefore "return information," that was exempt from disclosure. 267 F.3d at 1136–38. The Court found the identities of the third parties calling for the audits to be "*factual* in nature," *id.* at 1136 (emphasis in original), quoting *Tax Analysts*, 117 F.3d at 613–14, concluding that since the catch-all phrase "*other* data" suggests that Congress regarded all of the preceding items, including the taxpayer's identity, to be data, a third-party complainer's identity would also qualify. *Id.* Furthermore, the Court stated, "revelation of any third-party complainer 'identity' expresses the factual proposition that the person identified has communicated with the IRS about the status of a taxpayer or a potential taxpayer." *Id.*

The Court also concluded that the contents of the third parties' letters were "data" because they "characteristically assert[ed] obviously factual propositions." *Id.* at 1137. Moreover, even the "exhortational" parts of the communications were still "unique to a particular taxpayer," which was "the factor [the Court] used in *Tax Analysts* to help distinguish between non-disclosable facts and disclosable legal conclusions." *Id.*, citing *Tax Analysts*, 117 F.3d at 614. Noting that the *Tax Analysts* opinion "rested primarily on the distinction between facts, which are 'data,' and legal analysis, which we held was not," the Court declined to decide whether "propositions that were neither factual nor legal" constituted "data." *Id.* at 1138. But the Court concluded that "the taxpayer-specific character of the entirety of these communications points under *Tax Analysts* toward their classification as 'data.'" *Id.*, citing *Tax Analysts*, 117 F.3d at 614.

In light of these cases, the Court finds that the "tax checks" and related records constitute "data" within the meaning of section 6103.  First of all, unlike the legal conclusions at issue in *Tax Analysts*, all of these records are unquestionably taxpayer-specific:  they relate to requests for the "taxpayer or 'return information'" of individual candidates for Executive Branch employment or presidential appointment.  FOIA Req. at 2; *see Tax Analysts*, 117 F.3d at 614; *Landmark*, 267 F.3d at 1137.  Indeed, the very existence of these records is "unique" to the individual taxpayer in question.  *See Landmark*, 267 F.3d at 1137–38.  Second, although the question is closer, the Court finds that it is bound by the decision in *Landmark* to hold that these records are sufficiently "factual in nature" to be data; they assert the "obviously factual propositions" that a person was under consideration for Executive Branch employment, that he or she requested that confidential return information be disclosed to the Executive Office of the President, and that the IRS responded.  *See id.* at 1137; *see also id.* at 1136 ("[R]evelation of any third-party complainer 'identity' expresses the factual proposition that the person identified has communicated with the IRS about the status of a taxpayer or potential taxpayer."); 26 U.S.C. § 6103(c) (providing that the Secretary of the Treasury may release the taxpayer's return information "to such person or persons as the taxpayer may designate in a request for or consent to such disclosure").  Following the available precedent, the Court concludes that "the taxpayer-specific character of the entirety of these [tax check] communications points under *Tax Analysts* toward their classification as 'data.'"  *See Landmark*, 267 F.3d at 1138, citing *Tax Analysts*, 117 F.3d at 614.  Therefore, the "tax checks" and related records constitute "return information" that is exempt from disclosure under FOIA Exemption 3 and 26 U.S.C. § 6103.

Plaintiff argues that defendant's interpretation of section 6103 in this case is undermined by the fact that defendant redacted and released "substantially similar records – namely, tax checks

for credit worthiness under § 6103(*l*)(3)" in response to another FOIA request by plaintiff.  Pl.'s Mem. at 7; *see also* Decl. of Allan Blutstein [Dkt. # 22] ¶¶ 7–8 (describing the FOIA request and the records released by the IRS).  But plaintiff does not seriously contend that the IRS's allegedly inconsistent interpretation of section 6103 constitutes a waiver of its ability to withhold the "tax checks" and associated records,[17] and it is not clear that the protections of section 6103 are subject to waiver, in any event.  *See First Heights Bank, F.S.B. v. United States*, 46 Fed. Cl. 827, 832 (2000) ("The government merely acts as a steward of the [section 6103] privilege.").  Thus, even if "[t]he IRS has indulged in . . . an inconsistency on this point," that does not alter the Court's finding that defendant properly withheld the "tax checks" and related records under Exemption 3 and section 6103.  *See Landmark*, 267 F.3d at 1136–37 (finding that "the term 'data' is correctly understood to cover the identity of third parties who urge the IRS to withdraw or reexamine an entity's tax-exempt status," even though the IRS had released the names of Members of Congress who had conveyed constituent concerns or written similar letters themselves).

## C. *Other records responsive to items three and four of plaintiff's FOIA do not necessarily constitute "return information."*

The determination set forth above relates to the "tax check" records only.  Plaintiff broadly sought "[a]ny communications by or from anyone in the Executive Office of the President constituting requests for taxpayer or 'return information' . . . that were not made pursuant to § 6103(g)" and related records, FOIA Req. at 2, and the Court does not accept the agency's

---

17    Rather, plaintiff argues that the IRS's prior release of similar records is "proof that the IRS's current view of Section 6103 must be flawed, in that it has historically treated Section 6103 in a narrower fashion."  Pl.'s Reply at 3.

assertion that any and all documents that might be responsive to items three and four of the request would be exempt as a matter of law.

First, it is not clear that all records related to requests for "taxpayer or 'return information'" would necessarily constitute information received or compiled "with respect to a return" or "with respect to . . . a determination" of liability under Title 26, as was the case with the "tax checks." *See* 26 U.S.C. § 6103(b)(2)(A). We don't know what the Executive Office may have asked for. So whether a particular request from that office is itself return information, as opposed to a record containing return information, is a determination that must be made on a case-by-case basis in light of the nature and content of the request.

It is true that there is some language in *Landmark* that could be read to suggest that any request for return information, by anyone, itself constitutes "data." But that interpretation does not sit well with this Court since the mere making of a request, even if it is taxpayer-specific, may not be factual in nature.[18] There seems to be something fundamentally different between the *Landmark* scenario – an outside entity submitting information to the IRS with the request that it be considered as part of the totality of the information contained *in* the metaphorical file marked "X's Return Information," upon which a determination of liability is based – and a simple request *for* the file itself by someone in the Executive Office of the President. ("Can I *see* 'X's Return Information?'") A simple request for information might do nothing to alter or add to the content of the file, and it might have no bearing upon the outcome of the IRS's review of the file, so it

---

18      The Court further notes that although "data" must be "taxpayer-specific," *see Landmark*, 267 F.3d at 1138, citing *Tax Analysts*, 117 F.3d at 614, it does not follow that all information that is "taxpayer-specific" must be "data." *See Church of Scientology*, 792 F.2d at 151 ("Congress would not have adopted such a detailed definition of return information in Section 6103 if it had simply intended the term to cover all information in IRS files . . . .").

might not be "factual in nature" like the other items in the series contained in the statutory definition of "return information,"[19] *see Tax Analysts*, 117 F.3d at 614, and it might not assert any factual proposition under the *Landmark* precedent. Indeed, the *Landmark* Court was careful to carve out "non-cognitive" material that was neither factual nor legal – which a simple request for information might be. *See* 267 F.3d at 1138 (declining to determine "whether propositions that were neither factual nor legal qualified as 'data'").

Finally, the Court observes that the Court in *Tax Analysts* modeled an approach that can be instructive here when it measured the agency's interpretation of the statutory phrase against the congressional purpose underlying the confidentiality provision. *See* 117 F.3d at 615. As that Court noted, Congress amended section 6103 in 1976 "in the wake of Watergate and White House efforts to harass those on its 'enemies list,'" in order to "restrict[] government officers and employees from revealing 'any return' or 'return information,'" *id.* at 611, and its "core purpose" is to "protect[] taxpayer privacy." *Id*. at 615. So, this Court questions whether section 6103 should or would shield records that indicate that confidential taxpayer information was misused, or that government officials made an improper attempt to access that information.

The IRS argues that "section 6103's definition of 'return information' . . . makes no distinction based on the purpose for which a person might seek disclosure of the documents." Def.'s Reply at 15. But accepting this argument would require a finding that even requests for return information that could involve a violation of section 6103 constitute "return information" that is exempt from disclosure under FOIA Exemption 3 and section 6103. The Court is unwilling

---

19      It would be tautological to hold that the mere fact that a request was made conveys the fact that a request was made and therefore the request itself is factual in nature.

to stretch the statute so far, and it cannot conclude that section 6103 may be used to shield the very misconduct it was enacted to prohibit.

Accordingly, the Court finds that defendant has not established that every record it could conceivably uncover that responds to items three and four of the FOIA request would fall within the definition of "return information" as clarified by *Tax Analysts* and *Landmark*. For that reason, and in light of the Court's finding that the search for records responsive to items three and four of the request was inadequate, the Court will remand those portions of the request to defendant so that it may conduct an adequate search, provide a more detailed declaration, and release any reasonably segregable, non-exempt information to plaintiff.

> **D.     Records responsive to items five and six of plaintiff's FOIA request do not necessarily constitute "return information."**

Items five and six of plaintiff's FOIA request sought records related to "requests for disclosure by any agency pursuant to" sections 6103(i)(1), (i)(2), and (i)(3)(A). FOIA Req. at 2. Defendant argues that any records responsive to these portions of the request would constitute confidential "return information," and so it did not conduct a search. Def.'s Mem. at 21; *see also* Higley Decl. ¶ 24. The Court disagrees that all records responsive to these portions of the request would necessarily be exempt, and so it will remand this aspect of the case to defendant.

Section 6103(i)(1) provides for the disclosure of "any return or return information . . . pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate judge . . . [to] officers and employees of any Federal agency who are personally and directly engaged in" activities related to the adjudication or investigation of a crime "not involving tax administration." 26 U.S.C. § 6103(i)(1)(A). Section 6103(i)(2) provides that the Secretary of the

Treasury shall disclose "return information (other than taxpayer return information)"[20] to certain agencies to facilitate the adjudication or investigation of a crime not involving tax administration, or a grand jury proceeding not involving tax administration,[21] upon receipt of a request that meets specified requirements.  26 U.S.C. § 6103(i)(2)(A)–(B).  And section 6103(i)(3)(A) provides that the Secretary of the Treasury may disclose "return information (other than taxpayer return information) . . . which may constitute evidence of a violation of any Federal criminal law (not involving tax administration)  to the extent necessary to apprise the head of the appropriate Federal agency charged with the responsibility of enforcing such law," including the taxpayer's identity. *Id.* § 6103(i)(3)(A).  Subsections (i)(2)(C) and (i)(3)(A)(ii) both provide that, for purposes of those provisions, a taxpayer's identity may also be disclosed.  *Id.* § 6103(i)(2)(C), (3)(A)(ii).

Defendant contends that there could be no records to produce of "requests for disclosure by any agency" under the first and third of these provisions – sections 6013(i)(1) and 6013(i)(3)(A)  – because these provisions do not supply any mechanism for agencies to "request" information from the IRS in the first place.  Def.'s Mem. at 18.  Plaintiff did not respond to this argument in either its opposition brief or its cross-reply, and so the Court considers it to be conceded.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004).  As for section 6103(i)(2), defendant argues that any agency requests for return information under this provision, and any related documents,

---

20      "The term 'taxpayer return information' means return information as defined in [26 U.S.C. § 6103(b)(2)] which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates."  26 U.S.C. § 6103(b)(3).

21      Section 6103(i)(2)(A) expressly incorporates the requirement set forth in 6103(i)(1)(A) that the enforcement action, investigation, or grand jury proceeding in question must involve "a specifically designated Federal criminal statute (not involving tax administration)."  *See* 26 U.S.C. § 6103(i)(1)(A), (2)(A)(i)–(iii).

are necessarily exempt from disclosure under Exemption 3 and section 6103 because, like the "tax check" documents, they fall under the catchall "other data" portion of the definition of "return information."  Def.'s Mem. at 20; *see also* 26 U.S.C. § 6103(b)(2)(A).

But even if these requests lodged by agencies in connection with the investigation of a crime qualify as "data" under section 6103(b)(2)(A), would they be data "with respect to *a return* or with respect to the determination of the existence, or possible existence, of liability . . . of any person *under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense*"? 26 U.S.C. § 6103(b)(2)(A) (emphasis added).  A request for "return information (other than taxpayer return information)," *id.* § 6103(i)(2)(A), is not necessarily a request "with respect to a return."  *See id.* § 6103(b)(2)(A), (b)(3).   And a request made in connection with an investigation of "a specifically designated Federal criminal statute (*not involving tax administration*)," *id.* § 6103(i)(1)(A), (2)(A)(i)–(iii) (emphasis added), would not be "with respect to" a determination of actual or potential liability under Title 26, the Internal Revenue Code.  *See id.* § 6103(b)(2)(A).   Thus, records related to requests for return information under section 6103(i)(2) are not definitively, themselves, "return information."  Accordingly, the Court cannot conclude that any and all records responsive to items five and six of plaintiff's request would be fully exempt from disclosure under Exemption 3 and section 6103.

**IV.    Defendant has not established that Exemptions 6 and 7(C) apply to the records responsive to items five and six of plaintiff's FOIA request.**

Defendant claims, in the alternative, that records responsive to items five and six of plaintiff's FOIA request were properly withheld under FOIA Exemptions 6 and 7(C).[22]   Def.'s Mem. at 21–26.   Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   Exemption 7(C) protects information that was (1) compiled for law enforcement purposes, if (2) the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."   *Id.* § 552(b)(7)(C).   To determine whether either Exemption 6 or 7(C) applies in a case, a court balances the defendant's asserted privacy interest against the public interest in disclosure of information.   *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 758–59 (1989).

In items five and six of its request, plaintiff sought "requests for disclosure by any agency" pursuant to sections 6103(i)(1), (i)(2), and (i)(3)(A) of the Internal Revenue Code, and all documents relating to those requests.   FOIA Req. at 2.   Plaintiff has conceded defendant's

---

22      Defendant also claims that records responsive to items three and four of the request were subject to withholding under Exemption 6.   Def.'s Mem. at 26–28.   But the Court has already found that the only records that defendant has identified, at this time, as responsive to items three and four of the request – the "tax check"-related records – are exempt from disclosure under Exemption 3 in conjunction with section 6103, and so it need not determine whether any other exemptions might apply.   The Court observes, however, that much of the information contained within the "tax check"-related records seems to be precisely the type of information that has been deemed exempt under Exemption 6 in other cases.   *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("The Supreme Court has made clear that Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature," including "'[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data,'" if the public release of that information would constitute a "clearly unwarranted invasion of personal privacy"), quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982).

argument that there are no responsive records related to sections 6103(i)(1) and (i)(3)(A), *see supra* § III(D), and so the only provision at issue here is section 6103(i)(2).  That section of the Internal Revenue Code provides that, upon receipt of a request that comports with the statutory requirements, the Secretary of the Treasury "shall" disclose return information to certain agencies to facilitate the adjudication or investigation of a federal crime not involving tax administration, or a grand jury proceeding with respect to a federal crime not involving tax administration.  26 U.S.C. § 6103(i)(1)(A)(i), (2)(A)(i)–(iii).

Defendant has not conducted a search for records responsive to items five and six of plaintiff's FOIA request, *see* Def.'s Mem. at 21; Higley Decl. ¶ 24, so the Court cannot yet determine whether any responsive records could be redacted to avoid an "unwarranted invasion of personal privacy" under Exemptions 6 or 7(C).  Defendant asked the Court "to remand the matter to the [IRS] to examine the records and make appropriate withholdings or redactions," in the event that the Court determined that Exemption 3 and section 6103 did not completely shield these records from disclosure, Def.'s Reply at 5 n.3, and that is the appropriate course of action.  Defendant is instructed to search for records responsive to items five and six of the request that relate to section 6103(i)(2), to release any reasonably segregable, non-exempt portions of the responsive records to plaintiff, and to supply a Vaughn index specifically identifying any material that has been withheld and the grounds for those withholdings.

## CONCLUSION

For the reasons stated above, the Court finds that defendant has established that it conducted an adequate search for records responsive to items one and two of plaintiff's FOIA request, but not for records responsive to items three and four.  The Court further finds that defendant has shown that "tax checks" and related records are exempt from disclosure under FOIA

Exemption 3 in conjunction with 26 U.S.C. § 6103, but that it has not shown that any and all records responsive to items three, four, five, and six of plaintiff's FOIA request would necessarily be exempt.  Therefore, each party's motion for summary judgment will be granted in part and denied in part, and the Court will remand the case to defendant so that it may conduct an adequate search for records responsive to items three through six of plaintiff's FOIA request and release all reasonably segregable, non-exempt information to plaintiff.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  August 28, 2015