UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAUSE OF ACTION,

        Plaintiff,

v.

        Civil Action No. 13-0920 (ABJ)

INTERNAL REVENUE SERVICE,

        Defendant.

## MEMORANDUM OPINION

Plaintiff Cause of Action brought this action under the Freedom of Information Act ("FOIA") against the Internal Revenue Service ("IRS"). Plaintiff suspects that someone within the Executive Office of the President unlawfully requested taxpayer or "return information" from the IRS, and it seeks records to prove its allegations. Compl. [Dkt. # 1] ¶ 7. The parties have been before the Court before: on August 28, 2015, the Court found the agency's search efforts to be inadequate, and it remanded the matter to the IRS so that the agency could conduct additional searches and release any non-exempt portions of responsive records to plaintiff. *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.D.C. 2015).

The agency conducted another search, but it did not locate any additional responsive records. So the parties have again both moved for summary judgment, and plaintiff has moved to strike part of one of the agency's declarations. Def.'s Mot. for Summ. J. [Dkt. # 66] ("Def.'s Mot."); Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 66-2] ("Def.'s Mem."); Pl.'s Cross-Mot. for Summ. J. & Mot. to Strike [Dkt. # 69] ("Pl.'s Mot."); Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. & in Supp. of Pl.'s Mot. [Dkt. # 69-1] ("Pl.'s Mem."). The motion to strike will be denied, and because the Court concludes that the agency's searches were adequate under all of the

circumstances, it will grant defendant's motion for summary judgment and deny the motion filed by plaintiff.

## BACKGROUND

I. **Cause of Action's FOIA Request, and the Court's Remand**

On October 9, 2012, plaintiff requested eight categories of records from defendant. Ex. 1 to Compl. [Dkt. # 1-3] ("FOIA Req.").[1] Only two sets of records – categories three and four of plaintiff's original request – remain at issue:

> 3) Any communications by or from anyone in the Executive Office of the President constituting requests for taxpayer or "return information" within the meaning of § 6103(a) that were not made pursuant to § 6103(g);
>
> 4) All documents, including notes and emails, referring or relating to any communication described in request #3;

FOIA Req. at 2.[2] In other words, the FOIA request specifically called for records of requests for confidential taxpayer information made outside of normal channels.

In 2015, the parties moved for summary judgment on issues relating to the adequacy of the agency's searches and the agency's invocation of certain statutory exemptions to redact information from the records it retrieved. At that time, the Court concluded that the search for records responsive to categories three and four was inadequate. *Cause of Action*, 125 F. Supp. 3d at 157–58. The agency had searched for responsive records in the Office of Legislative Affairs, and it also searched the Services and Enforcement Office, the Small Business/Self Employed

---

1  The Court's previous opinion sets out the full request. *Cause of Action*, 125 F. Supp. 3d at 150–53.

2  On November 4, 2013, the Court granted defendant's unopposed motion to dismiss plaintiff's claims with respect to categories seven and eight. *See* Order (Nov. 4, 2013) [Dkt. # 9]. Category seven became the subject of a separate lawsuit by plaintiff against the Treasury Inspector General for Tax Administration, also known as "TIGTA." *See Cause of Action v. TIGTA*, 130 F. Supp. 3d 270 (D.D.C. 2015); *Cause of Action v. TIGTA*, 70 F. Supp. 3d 45 (D.D.C. 2014).

function, the IRS Media Relations Office, and the Office of the Commissioner. *Id.* at 157. It located a set of documents called "tax checks," which are requests for the return information of individuals who are under consideration for various appointments to positions in the Executive Branch, but it did not search those documents because it categorically determined that those records would be exempt from disclosure under FOIA Exemption 3 and 26 U.S.C. § 6103(a). *Id.*

The Court found the agency's search to be inadequate, because the declaration submitted provided "no explanation for the conclusion that records of requests made by the Executive Branch would be located in the Office of *Legislative* Affairs or in any of the other offices [the agency] named, or why they would not be elsewhere." *Id.* at 157. The Court also faulted the agency for failing to identify key words or search terms that might identify "requests for 'taxpayer or return information' by the Executive Office of the President that were *not* made pursuant to section 6103(g)." *Id.* The Court remanded the matter to the agency to conduct additional searches for records responsive to items three and four of plaintiff's request. *Id.*[3]

## II. The renewed search for documents

The agency has proffered three declarations to support its second set of search efforts in this case: two declarations of Sarah Tate, an Attorney in the Office of Chief Counsel at the IRS, Decl. of Sarah Tate [Dkt. # 66-3] ("Tate Decl.") ¶¶ 1–2; Second Decl. of Sarah Tate [Dkt. # 75-1] ("2d Tate Decl.") ¶¶ 1–2, and the declaration of Linda J. McCarty, the Director of the Office of the Executive Secretariat in the Office of the Chief of Staff of the IRS. Decl. of Linda J. McCarty [Dkt. # 66-4] ("McCarty Decl.") ¶ 1.

---

3  The Court also remanded the search for documents in categories five and six, *Cause of Action*, 125 F. Supp. 3d at 163, but the parties later stipulated that the agency had "satisfied its obligations under the FOIA with regard to items 5 and 6 of Plaintiff's FOIA request." Joint Stip. [Dkt. # 61] at 2.

3

The agency attorney stated that the "Office of the Commissioner is the only office or division of the IRS likely to receive correspondence from the Executive Office of the President that is responsive to items 3 and 4" of plaintiff's request, and that the Office of the Executive Secretariat, which is within the Office of the Commissioner, is responsible for "receiving and tracking correspondence from the Executive Office of the President, and determining how each item should be handled." Tate Decl. ¶ 3. Therefore, according to the declarations, the Office of the Executive Secretariat is the component where responsive records were most likely to be found.

McCarty avers that the Office of the Executive Secretariat:

> [R]eceived several communications each month from the White House that pertained to the tax matters of specific taxpayers. These communications were correspondence the specific taxpayer addressed to the President, the First Lady, or the Vice President, seeking assistance with a tax matter. The White House forwarded such communications, without comment, to the IRS for handling. In each instance, staff of the IRS Office of the Executive Secretariat entered the communication in the correspondence-tracking system, E-Trak, and then forwarded the communication to the IRS office or division responsible for the tax matter for direct response to the taxpayer. The White House did not request information about the taxpayer or tax matter, and was not informed in writing or verbally anything about how the IRS handled each matter. It was the apparent business practice of the White House to send all correspondence pertaining to taxpayer-specific matters to the Office of the Executive Secretariat.

McCarty Decl. ¶ 3.

The agency also explained that the "E-Trak database provides the Service's leadership and business units the ability to manage incoming correspondence from, and replies to, *inter alia*, taxpayers, Congress, the Treasury Department, the White House, the Government Accountability Office, and the Treasury Inspector General for Tax Administration." Tate Decl. ¶ 4. Each piece of correspondence is scanned into the E-Trak system, and is categorized by sender, date, and subject matter; the correspondence, along with any replies to that correspondence, can be keyword searched. *Id.*

To identify responsive documents in the E-Trak database, the agency utilized the following search terms: White House, President of the United States, POTUS, Barack,[4] Obama, Bush, EOP, and EOP.gov. Tate Decl. ¶ 5. Those terms were used because they were "substantially the same search terms that the Court held constituted an adequate search for records responsive to items 1 and 2 of plaintiff's FOIA request" in the prior opinion. *Id.*; *see also Cause of Action*, 125 F. Supp. 3d at 155–57. In February of 2016, the parties agreed that the search for responsive records could be limited to specific offices within the Executive Office of the President: the Council of Economic Advisors, the Executive Residence, the National Security Council, the Office of Administration, the Office of the Vice President, and the White House Office. *Id.* ¶ 6. The parties also agreed to additional searches in E-Trak using the following search terms: ExecRes, CEA, NSC, OA, WHO, FEC, WH, WHCO, Executive Office of the President, Strelka, Office of the Vice President, OVP, and White House Office. *Id.* Neither search yielded responsive records. *Id.* ¶ 8.

Finally, the agency attorney became aware that plaintiff had requested that the agency search two other databases – AFOIA and EDIMS – for responsive records. Tate Decl. ¶ 9. AFOIA "is the nationwide inventory control and case management system used by the IRS Office of Disclosure to track and process requests for agency records made pursuant to section 6103 of the Internal Revenue Code, FOIA, and the Privacy Act." *Id.* ¶ 10. AFOIA was implemented in the summer of 2011. *Id.* EDIMS is the legacy system that was used before the implementation of AFOIA. *Id.* Though it was the agency's position that it "does not maintain the records plaintiff seeks" in either database, it voluntarily agreed to search those databases "in an excess of caution

---

4     The original Tate declaration twice misspelled President Obama's first name as "Barak." Tate Decl. ¶¶ 5, 11. While the agency concluded that the issue was with the declaration and not with the search, the agency re-ran the searches using the term "Barack," and did not find any responsive records. 2d Tate Decl. ¶ 4.

and to forestall disputes about the sufficiency of the search for responsive records." *Id.* ¶ 9. The agency searched both databases using the following terms: WH, EOP, White House, Obama, Barack Obama, George Bush, and Executive Office of the President. *Id.* ¶ 11. No responsive records were found. *Id.*

## III. Procedural History

After these searches were complete, the agency moved for summary judgment, attaching a statement of facts and the two declarations. Def.'s Mot.; Def.'s Mem.; Def.'s Statement of Undisputed Material Facts [Dkt. # 66-1] ("Def.'s SOF"); Tate Decl.; McCarty Decl. Plaintiff then filed a cross-motion for summary judgment, and it also moved to strike portions of the McCarty declaration. Pl.'s Mot.; Pl.'s Mem. It supplied its own statement of undisputed material facts, Pl.'s Statement of Undisputed Material Facts [Dkt. # 69-2] ("Pl.'s Cross-SOF"), a response to defendant's statement of undisputed material facts, Pl.'s Resp. to Def.'s SOF [Dkt. # 69-3] ("Pl.'s SOF"), and a declaration from its counsel. Decl. of Ryan P. Mulvey [Dkt. # 69-4] ("Mulvey Decl."). On August 2, 2016, defendant filed a reply in support of its motion and in opposition to plaintiff's cross-motion and motion to strike. Reply in Supp. of Def.'s Mot., Opp. to Pl.'s Cross-Mot. [Dkt. # 75] ("Def.'s Reply"), along with a response to plaintiff's statement of facts, Def.'s Resp. to Pl.'s Cross-SOF [Dkt. # 75-2] ("Def.'s Cross-SOF"), and a second declaration from Tate. 2d Tate Decl. And on August 31, 2016, plaintiff filed a cross-reply in support of its cross-motion and in support of its motion to strike. Pl.'s Cross-Reply in Supp. of Pl.'s Cross-Mot. [Dkt. # 76] ("Pl.'s Cross-Reply"). On April 7, 2017, the Court held a status conference in the matter. Tr. of Status Conference [Dkt. # 79] ("Tr.").

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). "The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing

its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006).

**ANALYSIS**

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential"), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

To prevail in a FOIA action, an agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). When an agency's search is questioned, it must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999); *see also Oglesby*, 920 F.2d at 68; *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

To demonstrate that it has performed an adequate search for documents responsive to a FOIA request, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F. Supp. 2d at 92.

To meet these requirements, the affidavit must at least include the agency's "rationale for searching certain locations and not others." *Defs. of Wildlife*, 623 F. Supp. 2d at 92. Agency affidavits attesting to a reasonable search "are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), "if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch*, 726 F.3d at 215, quoting *Consumer Fed'n of Am.*, 455 F.3d at 287.

An agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for the requested records,'" *Defs. of Wildlife*, 623 F. Supp. 2d at 91, quoting *Perry*

9

*v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), but they should "describe what records were searched, by whom, and through what processes." *Id.*, quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994). Conclusory assertions about the agency's thoroughness are not sufficient. *See Morley v. CIA*, 508 F.3d 1108, 1121–22 (D.C. Cir. 2007).

I.  **The motion to strike will be denied.**

Plaintiff has moved to strike portions of the declaration of Linda McCarty, which was filed in support of the agency's motion for summary judgment, so the Court will take up that issue first. Plaintiff cites Federal Rule of Civil Procedure 56(c)(4), which requires that a declaration used to support or oppose a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible as evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Plaintiff objects to the final sentence of paragraph three of the McCarty declaration, and to the entirety of paragraph five of the McCarty declaration. In the challenged sentence in paragraph three, McCarty avers that "[i]t was the apparent business practice of the White House to send all correspondence pertaining to taxpayer-specific matters to the Office of the Executive Secretariat." McCarty Decl. ¶ 3. Plaintiff argues that McCarty, who "is not an employee of the White House, [and] has never been an employee of the White House," lacks personal knowledge to testify about "White House practices." Pl.'s Mem. at 13. But McCarty's use of the word "apparent" makes it clear that she is speaking about what she has been able to observe – she does not purport to speak on behalf of the White House, and she does not proffer a definitive statement about what the White House did or did not do. The Court understands McCarty to be making the observation that, in her experience, the White House forwarded multiple taxpayer-specific inquiries to the Office of the Executive Secretariat. And as the head of the office that receives those communications, she

10

has personal knowledge of that process. Therefore, the Court will not strike the sentence in paragraph three. The Court notes that in any event, the Tate declaration supplies an additional basis for the finding that the Office of the Executive Secretariat is the office responsible for handling requests from the Executive Office of the President. Tate Decl. ¶ 3.

Plaintiff also moves to strike paragraph five of the McCarty declaration, which states:

> [T]he IRS takes seriously the confidentiality provisions of 26 U.S.C. § 6103, and trains its employees accordingly. If an IRS employee not assigned to the Office of the Executive Secretariat received a communication from someone at the White House seeking tax information, that employee would have known that he does not have the authority to disclose tax information to the White House, and would have promptly arranged to forward such communication to the Office of the Executive Secretariat for appropriate handling. If such a communication was received by the Office of the Executive Secretariat, staff would follow standard practice of this office and enter the communication in E-Trak.

McCarty Decl. ¶ 5. Plaintiff contends that those statements are "speculative," and it argues that there is "nothing in her declaration to indicate that Ms. McCarty has any personal knowledge of these topics." Pl.'s Mem. at 14. The Court finds that since McCarty has worked at the IRS for ten years, and she had served as the Director of the Office of Executive Secretariat for nine months at the time of her declaration, she has sufficient personal knowledge to describe the agency policies that were in place and had been communicated to employees. Obviously no declarant can rule out the possibility that an employee may fail to follow proper procedure, and therefore it would be speculative for her to aver that any employee who ever actually received an improper request in fact promptly forwarded it to the Office of the Executive Secretariat. But it is equally speculative to assume that such a request was made. The Court understands this paragraph of the declaration to be simply a statement of what proper procedure "would have" required in the hypothetical situation being described, and it will be received solely on that basis.

## II. The search for records responsive to requests three and four was adequate.

In the two categories of the FOIA request that remain at issue, plaintiff sought documents related to any communications from the Executive Office of the President asking for what would constitute confidential taxpayer or "return information" under 28 U.S.C. § 6103(a) that were <u>not</u> made pursuant to the procedures in § 6103(g) that govern official requests for this information. This required the agency to determine where documents related to these sorts of requests from the Executive Office of the President – which should not exist – would be likely to be found, if they did exist, and to explain why it looked where it did and used the search terms it selected.

In its initial opinion, the Court found the original searches for records responsive to categories three and four inadequate because:

> [The declarant] provides no explanation for her conclusion that records of requests made by the Executive Branch would be located in the Office of Legislative Affairs or in any of the other offices she named, or why they would not be elsewhere. Also, this portion of the FOIA request sought a broad range of records – those related to requests for "taxpayer or 'return information'" by the Executive Office of the President that were not made pursuant to section 6103(g) – and [the declarant's] failure to identify any key words or search terms that were used, or to describe the types of searches that were performed in any detail, undermines any claim that the search was "reasonably calculated to uncover all relevant documents."

*Cause of Action*, 125 F. Supp. 3d at 157–58 (internal citations omitted).

After the remand, the IRS took steps to remedy the deficiencies described in the Court's prior opinion. It identified the office that regularly communicates with the Executive Office of the President, and it utilized search terms that were arrived upon through discussions with the plaintiff. An agency attorney, Sarah Tate, has averred that:

> The Office of the Commissioner is the only office or division of the IRS likely to receive correspondence from the Executive Office of the President that is responsive to items 3 and 4 of plaintiff's October 9, 2012, FOIA request. Within the Office of the Commissioner is the Office of the Executive Secretariat. For the relevant time period . . . the Office of the

> Executive Secretariat was responsible for receiving and tracking correspondence addressed to the Office of the Commissioner, including correspondence from the Executive Office of the President, and determining how each item should be handled. All communications addressed to the Office of the Commissioner . . . were recorded in a computerized tracking system called E-Trak.

Tate Decl. ¶ 3.

The Director of Executive Secretariat, Linda McCarty, stated that any communication her office received from the White House would be entered into E-Trak. McCarty Decl. ¶¶ 3, 5. The agency then searched E-Trak using the search terms that had been approved in the Court's original opinion as well as an additional set of terms established through an agreement with the plaintiff. *See* Tate Decl. ¶¶ 5–7. Because the agency searched the relevant database using agreed-upon search terms, it has shown that "all files likely to contain responsive materials" were searched, and the Court finds that the search was "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.

### III. Plaintiff's challenges to the adequacy of the search do not create a genuine issue of material fact.

Plaintiff continues to challenge the adequacy of the search, arguing that since the requests were aimed at records of unauthorized disclosures, in addition to disclosures through proper channels, the agency should have conducted a broad search of its e-mail records to locate responsive material. *See* Pl.'s Mem. at 7–12. Because the agency's declarations indicate that it conducted "reasonably calculated" searches, it falls to plaintiff to "identify specific additional places the agency should now search." *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013). Since plaintiff has failed to meet that burden or create a genuine issue of material fact as to the adequacy of the search, summary judgment will be entered for the agency.

In its FOIA request, plaintiff asked for "[a]ny communications by or from anyone in the Executive Office of the President constituting requests for taxpayer or 'return information' within

13

the meaning of § 6103(a) that were not made pursuant to § 6103(g)." FOIA Req. at 2. An agency has "a duty to construe a FOIA request liberally," *PETA v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014), quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), and the D.C. Circuit has disapproved of agencies narrowing the scope of a FOIA request to exclude materials reasonably within the description provided by the requestor. *See, e.g., LaCedra v. Exec. Office for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003); *Nation Magazine*, 71 F.3d at 889–90, 892.

But that is not the situation here. In this case, plaintiff demands that the agency search for records of suspected unauthorized conduct – that is, requests for confidential information made outside of the statutory framework and the IRS's procedures for the handling of communications with the White House. *See* Pl.'s Mem. at 7. In other words, not only does plaintiff not know whether the records it seeks exist – they are not supposed to exist. But this raises the question: how would the agency be able to reasonably identify where records that should not exist are likely to be found?

Plaintiff submits that the IRS should have searched the Office of Privacy, Government Liaison, and Disclosure, Pl.'s Mem. at 9–10, but it points to no facts that would enable the Court to conclude that it would have been any more reasonable or likely that the records would be there than somewhere else.

Plaintiff also proposes that the agency should be required to search e-mail records. Pl.'s Mem. at 10–12. It argues that "[g]iven the political sensitivity of unauthorized requests for disclosure of tax returns or return information, individuals involved with such requests would likely employ less formal methods of communication, including email." *Id.* at 11. Plaintiff points to the recent unrelated Congressional investigation into the agency's handling of tax-exempt

14

entities, and the fact that the investigation unearthed communications on that topic made via email as a reason why it is "reasonable to assume that e-mail correspondence was used in other instances of agency wrongdoing." *Id.* at 11. But there is no actual evidence of wrongdoing in this case, and the obvious fact that employees of any government or private entity are likely to use email – for either appropriate or inappropriate communications – is not enough to support plaintiff's call for a broad search into email in this particular instance.

And even if the Court were to agree with the general proposition that requests for return information made outside of the statutorily prescribed channels could very well be communicated through email, whose email should be searched? Plaintiff maintained in its pleadings that it had made numerous attempts to collaborate on the identification of potential records custodians. Pl.'s Mem. at 10–11. But when the Court summoned the parties to a status conference and invited the plaintiff to provide more direction, plaintiff acknowledged that it had no particular email accounts in mind. Tr. at 7:16–9:5. Given plaintiff's inability "to identify specific additional places the agency should now search," *Hodge*, 703 F.3d at 580, plaintiff has not pointed to any genuine issue of fact related to the adequacy of the search.

The law is clear that FOIA does not provide requesters with a right to demand "an all-encompassing fishing expedition" of files in every office within an agency. *Dale v. IRS*, 238 F.

Supp. 2d 99, 105 (D.D.C. 2002).[5] And the court need not "embark on a time-consuming and costly goose chase in pursuit of phantom reports [from the agency]." *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 52 (D.D.C. 2004), *aff'd*, 171 F. App'x 855 (D.C. Cir. 2005). Plaintiff is offering assumptions and allegations, but "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *Hodge*, 703 F.3d at 580, quoting *SafeCard*, 926 F.2d at 1201; *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

---

5  While the *Dale* case arose in the context of a motion to dismiss, it is instructive. "Dale asserts that he was subjected to retaliatory audits by the IRS during President Clinton's administration from January 20, 1993 through January 19, 2001, and seeks access to any documents in the possession of the IRS that he believes will establish the political nature of these actions." *Dale*, 238 F. Supp. 2d at 100. He sought "access to '[a]ny and all documents, including but not limited to files, that refer or relate in any way to Billy Ray Dale.' *Id.* at 101. Dale stated that his request included '*all* Internal Revenue Service offices, departments, detachments, bureaus, operating locations, field offices, agencies, divisions, directorates, center headquarters, and/or other Internal Revenue Service organizations and entities.'" *Id.* The agency moved to dismiss, arguing that plaintiff did not "reasonably describe the records sought in his request." *Id.* at 105. The court agreed with the government and granted the motion to dismiss, finding that the failure to adequately describe the request amounted to a failure to exhaust administrative remedies. *Id.* The Court concluded that "[s]imply put, Dale's search request amounted to an all-encompassing fishing expedition of files at IRS offices across the country, at taxpayer expense." *Id.* Here plaintiff suspects that there was wrongdoing in connection with a particular taxpayer's confidential information, but FOIA does not authorize wide ranging searches for records that may or may not even exist.

## CONCLUSION

For those reasons, the Court will grant the agency's motion for summary judgment, and it will deny plaintiff's cross-motion for summary judgment and plaintiff's motion to strike. A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: May 25, 2017